### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 9:17-cv-81027-RLR

JACOB HORN and ROBERT VETTER
individually and on behalf of all
others similarly situated,                                  **CLASS ACTION**

      Plaintiffs,                                **JURY TRIAL DEMANDED**

v.

iCAN BENEFIT GROUP, LLC, a Florida
limited liability company,

      Defendant.
_____/

### PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS
### SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

**I.      INTRODUCTION**

On September 13, 2017, Plaintiff Horn filed suit against Defendant for violations of the

Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), alleging that Defendant iCan

Benefit Group, LLC ("iCan") sent telemarketing text messages to Plaintiff without his prior

express written consent. [DE 1]. On October 17, 2017, Plaintiffs Horn filed his First Amended

Complaint, which added Plaintiff Vetter to the case. [DE 9]. Defendant filed its Answer and

Affirmative Defenses to the First Amended Complaint on November 29, 2017. [DE 18].

Prior to the filing of this lawsuit, Defendant purchased an insurance policy (the "Policy")

from Liberty International Underwriters, Inc. ("Liberty") to insure Defendant for claims like those

asserted in this litigation. Upon receipt of Plaintiff Horn's initial Complaint, Defendant tendered

the lawsuit to Liberty, demanding coverage for Plaintiff's TCPA claims. Despite the fact that the

Policy clearly covered the claims at issue in this case, Liberty refused to honor the Policy, including

providing iCan with a defense or coverage for the claims.  Liberty incorrectly maintained that certain exclusions in the Policy should result in denial of coverage for TCPA claims like those asserted in this case, even though the TCPA is not mentioned anywhere in the Policy.  Using this flawed interpretation, Liberty informed Defendant that it would decline coverage.  Plaintiffs and Defendant, through their counsel, including coverage counsel retained by Plaintiffs and Defendant, are in agreement that the Policy does provide coverage for the TCPA claims asserted in this case.

During the course of litigation Plaintiffs and Class Counsel negotiated the Settlement Agreement and Release("Agreement" or "Settlement").[1]  The Settlement is a very good result for the Settlement Class given the circumstances, including Defendant's financial condition.  Based on the controlling legal standards and supporting facts, the Settlement is fair, adequate and reasonable.

Plaintiffs and Class Counsel now seek Final Approval of the Settlement so that they may proceed in attempting to recover the remaining balance of the Judgment from Liberty.  If successful in recovering from Liberty, Plaintiffs will then seek the Court's preliminary and final approval of a second notice to Class Members, a claims and distribution process, and attorneys' fees and Class Representative awards.

The Agreement was reached after months of negotiations between the Parties, including two in person settlement conferences at the offices of Defendant's counsel.  *See* Declaration of Manuel S. Hiraldo ("Hiraldo Decl."), at ¶ 2.[2]   Plaintiffs and Class Counsel investigated the facts and law underlying the claims asserted in the Action. Plaintiffs' Counsel also engaged in numerous

---

[1] All capitalized terms used herein have the same meanings as those defined in the Agreement.  A copy of the Agreement is attached as **Exhibit 1**.

[2] A copy of the Hiraldo Decl. is attached as **Exhibit 2**.

other discussions with Defendant's counsel regarding the claims.

Plaintiffs and their counsel believe that the claims asserted in the Action have merit. However, taking into account the risks of continued litigation, as well as the delays and uncertainties inherent in such litigation and any subsequent appeal, and Defendant's financial health, Plaintiffs and their counsel believe that it is desirable that the Action be fully and finally compromised pursuant to the terms and conditions set forth in the Settlement Agreement. Plaintiffs and their counsel have concluded that the terms and conditions of the Settlement Agreement are fair, reasonable and adequate to the proposed class, and that it is in the best interests of the proposed class to settle the Action.

The Agreement provides, *inter alia*, for (1) Defendant to contribute up to $50,000.00 for initial notice costs; (2) Defendant to assign its rights under the Policy to Plaintiffs and the Class Members; (3) the entry of a Final Consent Judgment against iCan in the amount of $60,413,112.00; and (4) Plaintiffs, the Class, and Class Counsel to use their best efforts to recover the remaining balance of the Judgment from Liberty.  After receiving Preliminary Approval from this Court, the Parties created a settlement website and have run banner ads on the internet to provide Class Members with initial notice.

Upon final approval of the Agreement by this Court, Plaintiffs and their Counsel will pursue an action against Liberty for the balance of the Final Consent Judgment.  If successful in recovering from Liberty, Plaintiffs will then seek the Court's preliminary and final approval of a second notice to Class Members, a claims and distribution process, and attorneys' fees and Class Representative awards.

Plaintiffs submitted the proposed Agreement, [DE 28-1], and the Court determined that it was fair and within the range of similar TCPA class action settlements given Defendant's financial

circumstances as was outlined in the Motion for Preliminary Approval of Class Action Settlement, [DE 28].  The Agreement provides potential relief to the Settlement Class where their recovery, if any, would otherwise be uncertain, especially given Defendant's willingness to continue its vigorous defense of the case.  The Agreement was reached only after written discovery and extensive arms-length negotiations.  For these reasons, and as further discussed below, Plaintiffs request the Court's final approval of the Agreement.

On March 2, 2018, the Court granted Preliminary Approval to the Settlement, directed that notice be provided to the Settlement Class, and established a deadline for the filing of a motion for Final Approval of the Settlement. [DE 33].

Plaintiffs and Class Counsel now request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Rule 23 of the Federal Rules of Civil Procedure; (3) appoint the Plaintiffs as Class Representative; and (4) appoint as Class Counsel the attorneys listed in paragraph 18 of the Agreement.

## II.    SUMMARY OF THE LITIGATION, MEDIATION, & SETTLEMENT

On September 13, 2017, Plaintiff Horn filed his Complaint in the United States District Court for the Southern District of Florida alleging that Defendant improperly sent text messages in violation of the TCPA.  [DE 1].  Plaintiff alleged that "in an attempt to solicit a response from consumers who have not signed up for Defendant's services, and to ultimately increase Defendant's revenue by encouraging consumers to purchase its services, Defendant conducted (and continues to conduct) a wide-scale solicitation campaign that features the sending of repeated unsolicited text messages to consumers' cellular telephones—without consent, all in violation of the [TCPA]." *See id.*

Plaintiff sought damages under the TCPA on behalf of himself and the following two proposed classes:

> **Autodialed No Consent Class**: All persons in the United States who from a date four years prior to the filing of the initial complaint to the present: (1) Defendant (or a third person acting on behalf of Defendant) sent text messages, (2) to the person's cellular telephone number, (3) for the purpose of selling Defendant's products and/or services, (4) using an automated telephone dialing system, and (5) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to send automated text messages to the Plaintiff.

> **Autodialed Stop Class**: All persons in the United States who from a date four years prior to the filing of the initial complaint to the present: (1) Defendant (or a third person acting on behalf of Defendant) text messaged, (2) on the person's cellular telephone, (3) for the purpose of selling Defendant's products and/or services, (4) using an automated telephone dialing system, (4) after the person informed Defendant that s/he no longer wished to receive text messages from Defendant.

*See id.* On October 17, 2017, Plaintiff Horn amended his Complaint, adding Plaintiff Vetter to the case. [DE 18]. On November 29, 2017, Defendant filed its Answer and Affirmative Defenses to Plaintiffs' Amended Complaint. [DE 18].

Prior to this litigation, Liberty issued the Policy, number PCCB-00234044-01, which provides coverage for the time period between June 27, 2017 to June 27, 2018. The Policy states:

> The insurer shall pay on behalf of the Company Loss which the Company becomes legally obligated to pay by reason of any Claim first made against the Company during the Policy Period or the Discovery Period, if exercised, for any Wrongful Acts by the Company taking place prior to the end of the Policy Period.

The Policy contains exclusion clauses which detail the situations where the Policy does not provide coverage. There is no exclusion for TCPA claims. Indeed, the words "Telephone Consumer Protection Act" or "TCPA" do not appear anywhere in the Policy.

5

Defendant submitted the Complaint in this case to Liberty and notified Liberty of Defendant's intent to exercise the Policy's coverage.  On November 15, 2017, Liberty sent iCan a declination of coverage, stating that coverage was not available and that TCPA claims were excluded from coverage.  Liberty incorrectly asserted that the exclusion clause for invasion of privacy claims applied to the claims in this lawsuit.  Liberty also referenced other exclusion clauses which it claimed applied.  None of these mention the TCPA.

The Parties are in agreement that the Policy provides coverage for TCPA claims.  Courts have recognized that TCPA injuries go beyond invasion of privacy, and include nuisance, cost, and inconvenience.  *See e.g. Tillman v. Ally Fin. Inc.*, No. 2:16-cv-313-FtM-99CM, 2016 U.S. Dist. LEXIS 164997 (M.D. Fla. Nov. 30, 2016) ("the Federal Communication Commission (FCC) has stated that [t]he intent of Congress, when it established the TCPA in 1991, was to protect consumers from the **nuisance**, invasion of privacy, **cost, and inconvenience that autodialed and prerecorded calls generate**.") (emphasis added).

Further, if Liberty – a highly sophisticated and experienced insurer – intended to exclude TCPA claims from coverage, it could have easily done so by simply stating so in the policy it drafted.  *See St. Luke's Cataract & Laser Inst., P.A. v. Zurich Am. Ins. Co.*, 506 F. App'x 970, 977 (11th Cir. 2013) ("If [the insurer] had intended the exclusion to apply to any unauthorized use on the internet, they could have drafted the exclusion to say so."); *Berkshire Life Ins. Co. v. Adelberg*, 698 So. 2d 828, 830 (Fla. 1997) ("If this was [the insurance company's] intent, the company should have so stated in unambiguous language. […] The principle of the law is firmly imbedded in the jurisprudence of this State that contracts of insurance should be construed most favorably to the insured.") (internal quotation marks removed); *Davis v. Nationwide Life Ins. Co*., 450 So. 2d 549,

550 (Fla. 5th DCA 1984) ("If an insurer intends to restrict coverage, it should use language clearly stating its purpose.").

Indeed, TCPA exclusion language appears regularly similar insurance policies.  However, Liberty did not include this language in the Policy.  Notwithstanding, Liberty has attempted to shirk its obligations by misconstruing the Policy's exclusion clauses.  Thus, the parties believe in good faith that the Policy provides for coverage.  Both Plaintiffs and Defendant have retained outside insurance coverage counsel to assist in the analysis and determination of the coverage issue and have both concluded that coverage exists.

On or about October 26, 2017, counsel for iCan contacted the undersigned for purposes of discussing an early class-wide resolution of the case.  On December 1, 2017, the parties held a settlement conference at the offices of iCan's counsel in West Palm Beach, Florida.  The conference was attended in-person by counsel for Plaintiffs, Defendant's counsel, including outside coverage counsel, and Defendant's General Counsel.  During this initial conference, the parties discussed the class-wide resolution of the case, including iCan's financial situation and review of iCan's verified financial documents, as well as the Policy and denial of coverage by Liberty.  Settlement discussions continued in the weeks following the settlement conference.

On December 28, 2017, the parties held a second settlement conference.  In attendance at this conference was counsel for Plaintiffs, Defendant's counsel, and Defendant's General Counsel.  During the weeks following the second settlement conference, the parties continued their negotiations through various teleconferences and e-mail communications.  Ultimately, on or about January 16, 2018, the parties reached an agreement on the material terms of a settlement, resulting in the filing of a Notice of Settlement with this Court.  [DE 24].

The Parties worked diligently to draft and finalize a written settlement agreement. On February 14, 2018, Plaintiffs and Class Counsel filed their Motion for Preliminary Approval. [DE 28].  On March 1, 2018, the Court held a hearing on the Motion for Preliminary Approval. On March 2, 2018, the Court entered the Preliminary Approval Order that, *inter alia*, directed the Notice be given to the Settlement Class and established deadlines for the filing of the Motion for Final Approval, the timely submission or objections or requests for exclusions, and set a date for the Final Approval Hearing. [DE 33].  That same day, the Court entered a Final Consent Judgment in the amount of $60,413,112.00.

Although Defendant denies any liability or wrongdoing related to this Action, Defendant sought to settle this matter in part because of its limited financial resources. Hiraldo Decl. at ¶ 3. Based on the financial documents and declaration provided by iCan, Class Counsel have confirmed that iCan is unable to contribute even a nominal sum towards a class-wide resolution of the case. *Id*. at ¶4.  Additionally, should a judgment be entered against iCan for even the lower statutory exposure amount of $1,250,000,000.00, iCan would have no choice but to file for bankruptcy. Consequently, there is no scenario pursuant to which Class Members would be able to recover directly from iCan and, thus, the contemplated resolution consisting of assignment of iCan's rights to the Policy and pursuit of a coverage claim against Liberty is the best option available to give Class Members the possibility of recovering their damages.  Hiraldo Decl. at ¶ 9.

## III.   SETTLEMENT TERMS

The Settlement terms are detailed in the attached Agreement.  The following is a summary of its material terms.

### A.   The Settlement Class

Pursuant to Fed. R. Civ. P. 23, the Parties agree to certification, for purposes of the Settlement and the Agreement only, of the following Settlement Class:

> All persons in the United States who from a date of four years prior to the filing of the initial Complaint to the present: (1) Defendant (or a third person acting on behalf of Defendant) sent text messages; (2) to the person's cellular telephone or number assigned to a VOiP line which was, as to the VOiP line, either ultimately delivered to (a) the person's cellular telephone number or (b) some other medium which captures and records a text message and for which the person is charged a per-call fee; (3) for the purpose of selling Defendant's products and/or services, ("Settlement Class").

Specifically excluded from the Settlement Class are the following Persons:  iCan Benefit Group, LLC, its parents, subsidiaries, affiliates, officers and directors, any entity in which iCan Benefit Group, LLC has a controlling interest; all customers who make a timely election to be excluded; and all judges assigned to this litigation and their immediate family members.

### B.    Monetary Relief

The Settlement required the entry of a Final Consent Judgment against Defendant in the amount of $60,413,11.00.  It also required Defendant to assign its rights under the Liberty Policy to Plaintiffs and the Class.  Finally, the Settlement required Defendant to contribute up to $50,000.00 to initial notice costs.  If this Court grants final approval of the Settlement, Plaintiffs, the Class, and Class Counsel will use their best efforts to recover the remaining balance of the Judgment from Liberty.

In the event of a successful recovery from Liberty, Plaintiffs and Class Counsel will create a plan to distribute the recovery to Class Members in an equitable manner.  This plan will be subject to the Court's preliminary and final approval and a second, more extensive, round of notice to Class Members.

### C.    Settlement Notice

The Notice Program was designed to provide the best notice practicable given the circumstances and the specific limitations in this case.  Hiraldo Decl. at ¶ 10.  Defendant does not have any mailing address information for Class Members.  In addition, because of the large class

9

size—approximately 2.5 million Class Members—Defendant is unable to afford the reverse-lookup method to determine mailing addresses.

Because of these limitations, mail notice is impossible at this point.  Instead, the Parties agreed to publish notice in a manner that satisfies due process and created a Settlement Website that provides information and relevant documents related to the Settlement, including Notice and, when applicable, a downloadable Claim Form that may be submitted by U.S. Mail.  The Notice includes instructions about opting out or objecting to the Settlement Agreement.  After the Court granted Preliminary Approval, the Parties retained Settlement Administrators KCC, LLC (the "Notice Administrator") to administer the website and run internet banner ads to provide Class Members with initial notice.  The Notice Administrator has run millions of banner ads on Google and Facebook and has, as of the time of this writing, achieved approximately twenty-four million impressions, with a final goal of achieving approximately forty-four (44) million impressions by April 28. 2019.  *See* Declaration of Karen Rogan ("Rogan Decl."), at ¶ 4.[3]

Defendant will bear the initial costs of notice and administration up to an amount of $50,000.00.  In the event of successful recovery from Liberty, additional notice costs will be paid out of any recovery amounts and not by Defendant and, after approval from the Court, additional notice will be sent to Class Members.  This notice will include directions for opting out, objecting, or submitting a Claim to the Settlement Administrator.

## IV.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

Court approval is required for settlement of a class action. Fed. R. Civ. P. 23(e).  The federal courts have long recognized a strong policy and presumption in favor of class settlements.  The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as

---

[3] A copy of the Rogan Decl. is attached as **Exhibit 3**.

well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig.*

*Am. Poultry*, 669 F.2d 228, 238 (5th Cir. Unit B 1982).  In evaluating a proposed class settlement,

the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is

whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'"

*Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 28, 2006) (quoting *Zerkle v. Cleveland-*

*Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971)).  Indeed, "[s]ettlement agreements are highly

favored in the law and will be upheld whenever possible because they are a means of amicably

resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust*

*Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977).  Class settlements minimize the litigation expenses of

the parties and reduce the strain that litigation imposes upon already scarce judicial resources.

Therefore, "federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*,

75 F.3d 1191, 1196 (7th Cir. 1996). The Settlement here is more than sufficient under Rule 23(e)

and Final Approval is clearly warranted.

### A.   The Court Has Personal Jurisdiction Over the Settlement Class Because the Settlement Class Received Adequate Notice and an Opportunity to Be Heard.

In addition to having personal jurisdiction over the Plaintiffs, the Court also has personal

jurisdiction over all members of the Settlement Class because they received the requisite notice

and due process.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (citing

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)); *see also In re*

*Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3d Cir. 1998).

### 1.   The Best Notice Practicable Was Furnished.

The best practicable notice is that which is "reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S.

306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roebuck & Co*., 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also* Manual for Compl. Lit., § 21.312 (listing relevant information).

As discussed above, this case presents unique challenges to providing mailed notice to Class Members at this time.  Instead, the Notice Program was comprised of two parts: (1) a Settlement Website which provides access to the Long-Form Notice, Agreement, and other relevant documents and (2) running internet banner ads to provide Class Members with initial notice.

Each facet of the Notice Program was timely and properly accomplished.  *See* Rogan Decl. at ¶¶ 4-6.  The Notice Administrator established the Settlement Website, http://www.icantcpasettlement.com, which went live on March 26, 2018.  *Id*. at ¶ 6. The Long Form Notice, along with other key pleadings, have been and will continue to be available on the Settlement Website or upon request to the Settlement Administrator, to enable Settlement Class members to obtain detailed information about the Action and the Settlement.  As of April 24, 2018, the Settlement Website had 28,441 unique visitors with a total of 276,280 page views.  *Id*.  In addition, the Settlement Administrator has run millions banner ads to provide Class Members with additional notice.  As of April 23, 2018, the banner ads have had 34,942,583 impressions. *Id*. at ¶ 4.

### 2.     The Notice and Notice Program Were Reasonably Calculated to Inform the Settlement Class of Their Rights.

The Court-approved Notice and Notice Program satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably

necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1104-05.

The Notice, among other things, defined the Settlement Class, described the assignment of Defendant's rights under the Liberty Policy to the Class, the entry and amount of the Consent Judgment, Class Representatives' and Class Counsel's plan to pursue an action against Liberty, and informed Settlement Class members of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. It also notified Settlement Class Members that a final judgment would bind them unless they opted-out and told them where they could get more information – for example, at the Settlement Website that has a copy of the Agreement, as well as other important documents. Hence, Settlement Class Members were provided with the best practicable notice that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15).

As of April 25, 2018, the Settlement Administrator and Class Counsel have received no requests for exclusion and no objections to the Settlement had been filed. Rogan Decl. ¶¶ 7-8; Hiraldo Decl. ¶ 11. The opt-out and objection period end on May 14, 2018.

**B.     The Settlement Should Be Approved as Fair, Adequate and Reasonable.**[4]

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better

---

[4] As of the date of this Motion, there have been no objections to the Settlement. In the event any timely objections are submitted Class Counsel will file a response.

served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)).  Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness and adequacy of a class settlement under Rule 23(e):

(1)   the existence of fraud or collusion behind the settlement;

(2)   the complexity, expense, and likely duration of the litigation;

(3)   the stage of the proceedings and the amount of discovery completed;

(4)   the probability of the plaintiffs' success on the merits;

(5)   the range of possible recovery; and

(6)   the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986.  The analysis of these factors set forth below shows this Settlement to be eminently fair, adequate and reasonable.

**1.    The Settlement Was the Result of Arm's-Length Negotiation Between the Parties.**

The context in which the Settlement was reached confirms that it was the result of arm's-length and informed negotiations as opposed to collusion among the parties. The Settlement was reached only after multiple settlement conferences between the Parties and extensive negotiations.

Moreover, the Parties agreed on the terms of the Settlement through experienced counsel, who had at their disposal ample information to evaluate the terms of any proposed agreement so as to reach a fair and reasonable compromise. As such, it is clear that the Settlement was the result of arm's-length and informed negotiation between the Parties, and given that, this Court should not hesitate to approve it.

### 2.   The Settlement Satisfies Each of the *Bennett* Factors.

In addition to being the result of arm's-length negotiations free from fraud or collusion, the Settlement here also satisfies each of the *Bennett* factors.   While the Eleventh Circuit instructs district courts to consider the *Bennett* factors, "[i]n evaluating these considerations, the district court should not try the case on the merits." *Perez v. Asurion Corp*., 501 F. Supp. 2d 1360, 1380 (S.D. Fla. 2007).   "Rather, the court must rely upon the judgment of experienced counsel and, absent fraud, should be hesitant to substitute its own judgment for that of counsel." *Id*.   Here, as explained below, each of the *Bennett* factors weighs in favor of approving the Settlement Agreement.

#### a.   *Likelihood of Success at Trial*

The first *Bennett* factor to consider in determining whether a settlement is fair, reasonable, and adequate is the likelihood of success at trial.   "The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Lipuma*, 406 F. Supp. 2d at 1319; s*ee also Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1323-24 (S.D. Fla. 2007).   Where success at trial is not certain for plaintiffs, this factor weighs in favor of approving the settlement. *See Fresco v. Auto. Directions, Inc.*, No. 03-CIV-61063-MARTINE, 2009 WL 9054828, at *4 (S.D. Fla. Jan. 20, 2009); *Perez*, 501 F. Supp. 2d at 1380.   Defendant has asserted numerous defenses to Plaintiffs' claims.   If Defendant proves these defenses, then Plaintiffs and

the class will recover nothing.  Additionally, Defendant's financial situation makes relief unlikely even if Plaintiffs' are successful on the merits.  Thus, Plaintiffs' ultimate success in this matter is far from guaranteed.

Further, and notwithstanding the strength of this case, Plaintiffs recognize that the expense, duration, and complexity of protracted litigation would be substantial and require further briefing on numerous substantive issues, evidentiary hearings, and further discovery.  Against the inherent uncertainty raised by these issues is the concrete nature of the relief afforded under the Settlement, where Defendant contributes $50,000.00 to initial notice costs, the Settlement Class Members are assigned Defendant's rights to the Liberty Policy, the entry of a substantial  Consent Judgment, and have the possibility of recovering the Consent Judgment from Liberty. Because ultimate success at trial is far from certain, and the value of the Settlement is unquestionably strong in comparison, the first *Bennett* factor weighs in favor of approving the Settlement.

### b. *Range of Possible Recovery and Point at which Settlement is Fair, Reasonable, and Adequate*

Analysis of the second and third *Bennett* factors—the range of possible recovery and the point on or below the range at which a settlement is fair, adequate and reasonable—is often combined.  *In re Sunbeam*, 176 F. Supp. 2d at 1331.  As in most litigation, "[t]he range of potential recovery spans from a finding of non-liability through varying levels of injunctive relief, in addition to any monetary benefits to class members."  *Figueroa*, 517 F. Supp. 2d at 1326 (citing *Lipuma*, 406 F. Supp. 2d at 1322) (internal quotation omitted).  However, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality."  *Figueroa*, 517 F. Supp. 2d at 1326

Defendant is unable to afford any meaningful relief to the Class.  Hiraldo Decl. at ¶ 4. The risk that Plaintiffs and the Settlement Class would receive a smaller judgment than the settlement,

16

factoring in Defendant's financial situation, was (appropriately) a significant factor in the decision to settle. The Settlement is consistent with other actions of this type and, considering the circumstances, is fair, adequate and reasonable. Thus, the second and third *Bennett* factors weigh in favor of approval.

### c.  *Complexity, Expense, and Duration of Litigation*

The next *Bennett* factor to consider is the complexity, expense, and duration of litigation. As the Eleventh Circuit has noted, "settlements contribute greatly to the efficient utilization of our scarce judicial resources." *Cotton*, 559 F.2d at 1331 "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez*, 501 F. Supp. 2d at 1381. In evaluating this *Bennett* factor, courts "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma*, 406 F. Supp. 2d at 1323. Here, this factor weighs in favor of approving the Settlement Agreement.

In the absence of the Settlement, it is certain that the expense and duration of protracted litigation would be substantial. If the Court were to grant class certification or a dispositive motion in either party's favor, given the history of this litigation, the losing side would likely seek relief from the Eleventh Circuit. In either case, continued litigation of this matter would delay its resolution and inflict unnecessary additional expense on both sides. Where unnecessary additional costs and delay are likely to be incurred absent a settlement, "it [is] proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma*, 406 F. Supp. 2d at 1323 (quoting *In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D. La. 1993)). *See also Perez*, 501 F. Supp. 2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays

17

and complexities presented by the nature of the case, the benefits of a settlement are clear."). Thus, the complexity, expense, and duration of litigation thus weigh in favor of approving the Parties' settlement.

### d.   *Substance and Amount of Opposition to Settlement*

The next *Bennett* factor to consider is the substance and amount of opposition to the settlement.  Here, the Court-approved notice plan prompted zero requests for exclusion and no objections.  The fact there are no objections demonstrates that Class Members find the agreement reasonable and fair, and strongly favors approval of the settlement.  *See Lipuma*, 406 F. Supp. 2d at 1324 ("a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval."); *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-cv-0986, 2006 WL 1132371, at *13 (S.D. Fla. Apr. 7, 2006) ("I infer from [the] absence of a significant number of objections that the majority of the Class found [the settlement agreement] reasonable and fair."). Accordingly, the clear lack of opposition weighs heavily in favor of final approval.

### e.   *Stage of Proceedings at which Settlement Achieved*

The final *Bennett* factor looks to the stage of proceedings at which the settlement was achieved.  Courts look at this factor "to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation."  *Perez*, 501 F. Supp. 2d at 1383; *see also Access Now, Inc. v. Claire's Stores, Inc.*, 00-cv-14017, 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("Because the parties have expended much effort in analyzing the issues, this Court should find that the parties are at a proper juncture with sufficient information to settle this action."); *In re Sunbeam*, 176 F. Supp. 2d at 13328 ("Obviously, the case had progressed to a point where each side was well aware of the other side's position and the merits thereof.  This factor weighs in favor of the Court finding the

proposed settlement to be fair, adequate, and reasonable.").

Here, the Settlement Agreement was not reached until the Parties had engaged in motion practice and written discovery. Plaintiffs ultimately determined that they were provided with sufficient information about the text messages at issue, the size of the Settlement Class, and the range of the Class's potential damages—all *before* engaging in settlement negotiations and agreeing to this Settlement.

Hence, there should be no question that, by the time the Settlement was reached, Plaintiffs had enough information to sufficiently evaluate the strength of the claims of the Settlement Class and weigh the benefits of Settlement against continued litigation.  The stage of proceedings factor thus weighs in favor of approval as well.

## V.    CONCLUSION

The Settlement represents a very good result given the obstacles confronted in this Action. Whereas continued litigation could result in no recovery at all for Class Members, the Settlement achieves a substantial Consent Judgment, the assignment of rights to Class Members of Defendant's insurance policy, and the potential to recover the Judgment from Liberty.   The Settlement more than satisfies the fairness and reasonableness standard of Rule 23(e), as well as the class certification requirements of Rule 23.

Accordingly, Plaintiffs and Class Counsel respectfully request that this Court: (1) grant Final Approval to the Settlement and enter the attached proposed order; (2) certify for settlement purposes the Settlement Class; (3) appoint Plaintiffs as Class Representatives; and (4) appoint as Class Counsel the law firms and attorneys listed in paragraph 16 of the Agreement.  In the event this Court does so, Plaintiffs and Class Counsel will promptly begin an action against Liberty to attempt to collect the balance of the Judgment.

Dated:  April 25, 2018


Respectfully submitted,


**HIRALDO P.A.**                                   **LAW OFFICES OF STEFAN COLEMAN P.A.**

*/s/ Manuel S. Hiraldo*                           Stefan Coleman
Manuel S. Hiraldo                                 Florida Bar No. 00030188
Florida Bar No. 030380                            201 S. Biscayne Blvd., 28th Floor
401 E. Las Olas Boulevard                         Miami, Florida 333131
Suite 1400                                        Telephone: (888) 333-9427
Ft. Lauderdale, Florida 33301                     Facsimile: (888) 498-8946
mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

*Counsel for Plaintiff and the Class*             *Counsel for Plaintiff and the Class*

**IJH LAW**
Ignacio J. Hiraldo
Florida Bar No. 0056031
14 N.E. First Ave.
10th Floor
Miami, Florida 33132
ijhiraldo@ijhlaw.com
Telephone: 786.351.8709

*Counsel for Plaintiff and the Class*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on April 27, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
mhiraldo@hiraldolaw.com
Telephone: 954.400.4713